Pearson Education. Okay. Okay, I think we met. Mr. It's the Keebee. Keeba, sir. Keeba, we met you yesterday. Nice to see you again. Thank you for having me. Okay, I believe you are the appellant here. So please proceed. May it please the court. The court has brought to the party's attention the California Court of Appeal decision in Jacobs versus Teneca West, and asked us to focus on what bearing the case may have, if any, on whether the appellant Judy Codding or the appellee Pearson Education has the burden of proof on causation. By way of background, the admissible evidence is undisputed that Pearson Education did nothing after it signed the July 15, 2016 amendment to Dr. Codding's contract to try to sell the Pearson system courses for PSoC. It is also undisputed that Pearson Education affirmatively took steps not to sell PSoC after that day. Whatever the duty of using an usable effort to sell the product may have been, the cases are quite clear that doing nothing does not suffice. Our opening brief cited three cases for the proposition where, as here, the party with the duty to do something does nothing, the burden shifts to its ego, had it used reasonable efforts to do what it was supposed to do, it would not have been able to do it. Those cases are the second decision by Judge Friendly and Bloor, the Delaware Supreme Court's decision in the Williams Companies, and the Texas Appellate decision in CKB Associates. We also cited those cases in the district court. Counsel, with respect, perhaps I'm reading the record differently than you do. But I thought that when the parties discussed what was going forward in 2019, your client had proposed starting the sales period only when they commenced their bona fide commercial effort to sell the PSoC. They rejected that and just said it's going to be through the end of 2019. Previous to that time, and perhaps later on, literally millions and millions of dollars had been spent to market this product, this service and product. I find it difficult to believe that, particularly in light of the amendment of the contract, provided no basis for a bona fide effort, that all of the money and time that was put into this amount said nothing. What am I missing? You're missing two things. First of all, the pre contract, pre July 15, 2016 correspondence is inadmissible, as this court has held, because you have a merger clause and integration clause in the contract documents that were signed, drafted by Pearson Education. So first of all, they are inadmissible. Second of all, even if they were admissible, the point is clear that if you take a look at what the parties did agree to, there was an obligation on Pearson's part to, first of all, we is a given that under California law, the Brawley case, there is an obligation on Pearson's part to use its reasonable best efforts to sell the product. Point one. Point two, that did not change, regardless of whether or not a provision was put into the final agreement, that you had to start on a certain date, or it started at the time. Counsel, so first, the district court never reached this issue. Is that correct? Which issue, Your Honor? The issue of what efforts, if any, were required by Pearson, right? I believe that is correct, Your Honor. Okay. And your view is that if someone needed to reach that issue, that the provision in the contract that extended the performance period through 2019, that that was the amendment that included your claiming best efforts, but whether it's best efforts or reasonable efforts, your contention is that the contract in that language alone imposed that duty, and that the district court never reached that issue. Is that right? It is slightly different, Your Honor. That is our view. There was a duty to use some efforts, and the record is clear that there were no efforts after July 15, 2016, when this amendment was inked. The second point is that whether the district court reached it or not, this is before this court on a total de novo review, and you have the same record before it that the district court did, and I think it is incumbent upon this court to decide the issues that are before it on de novo review. Counsel, isn't it correct that under California law, in some instances, whether or not there is a duty like this could be determined by the trier of fact? Depending on the admissibility of parole or other evidence, if the court were to find that the in some instances go to a trier of fact? I don't believe so. I think it is a duty imposed by the law as a matter of law. Well, it would be a duty imposed as a matter of law based on the contract, right? I mean, what the duty is would be based on the contract, and sometimes parole is admissible. Sometimes parole is admissible, but here you have no other evidence that should be admissible based upon the contours of the four corners of this document, and there was no argument made by either party below that you needed to have paroled evidence to determine the duty. I think you said earlier that basically that nothing was done after July 2016. According to ER 565 through 69, Pearson Education made an additional cash contribution of $45.6 million in attempting to develop and sell the product. It also provided extensive training incentive for sale forces during the same period according to the brief, the red brief. Do you deny any of that's true? First of all, none of that is admissible because there was no showing of admissibility, and we clearly pointed out why. That's because the court didn't consider anything. But I mean, if there's evidence, if you're saying that the reason why they're responsible for this is because they didn't do anything, then evidence about what they did would obviously be admissible. And whether it has already been admitted may be a nothing when that evidence at least is in the record. The point is, there is no evidence that they actually tried to sell the product. There were obviously development costs that they've ran off prior to July 15, 2016. But this is $45.6 million since July, I mean, since July 2016. That's not chicken feed, at least in my world. There was absolutely no money spent to try and sell this product. What was that money for then? Development costs. Well, don't you have to develop it before you can sell it? I believe that's correct, Your Honor. So then that could have been used in fulfilling part of the responsibility under the contract, right? I take your point, Your Honor. Okay. Wouldn't it be particularly odd to spend that kind of money for something that you're not even going to try to sell? The point is, Your Honor, I will accept that as a given. But the point is that they've made absolutely no efforts to try to sell this product, period. And in fact, the record is clear. A senior vice president said that they directed people not to sell any of the product. There was no effort to sell it in 2016, 2017, 2018. And they clearly put it out of their power when they sold off the entire division in early 2019 and purported to assign Dr. Cotting's contract, which they had no duty to assign or no ability to assign because it was a business services contract. And they've not addressed that point at all in any of their papers, and thereby they've conceded that point. But let me go back, if I can, to the issue that the court was asked me to address. And I apologize, but I forgot to reserve two minutes of my time, and I would hope that you can... Yeah, we'll keep that in mind, though. Thank you very much. In response to the cases that we cited in our Rule 28J letter, Pearson has put in a reply that basically supports Dr. Cotting, not Pearson Education. It's 28J reply argues that there's a difference between an allegation of a breach of the covenant of good faith and fair dealing to use best efforts and some form of breach of a condition precedent. There is no such difference. As the California Court of Appeal held in the Carson case, 210 Calat 4409, is well-established, a breach of the implied covenant of good faith is a breach of the contract. Pearson attempts to construct a difference, arguing that Dr. Cotting, quote, did not plead that Pearson breached any duty allegedly contingent on a condition precedent. If we understand that correctly, it makes no sense. First of all, it is Pearson Education that is claiming that there was a condition precedent, namely that Pearson Education had to reach certain sales levels of PSOC before Dr. Cotting would be entitled to a bonus. Second, Dr. Cotting did allege that Pearson Education reached its duty to use best efforts to sell enough PSOC so she could recover her $5 million bonus. That's set forth in paragraph 41 of the second amended complaint and in particular in paragraph 150. Pearson Education's failure to use its good faith reasonable best efforts to sell PSOC after July 15, 2016 and continuing to the present has resulted in PSOC sales that are below the levels necessary for Dr. Cotting to receive her promised bonus, thereby approximately injuring Dr. Cotting. So we clearly did allege that. Counsel, again, I go back to the earlier point that the parties, Dr. Cotting, in this case, knew that the delay would not constitute a breach. She tried to add a specific provision in the draft agreement. The Pearson Education did not agree to that. She signed an agreement where she voluntarily accepted the risk that Pearson Education would not commence and then quote, bona fide effort to sell PSOC, did she not? I don't believe that's that's accurate, Your Honor. She signed an agreement that extended the period. The only reason to extend the period was that they would then have the ability and I believe the duty to use their best efforts to try and sell that product in the next three years. But I thought she specifically asked for that and it was rejected. She asked. All she got was an extension on the time period. Isn't that correct? Excuse me, Your Honor, what was your question? I thought she wanted that best effort and that was rejected. No, no, no. Instead, what she got was an additional period of time. There was no specific request to have using their best efforts. It was simply to extend the starting date to when they started to sell the product that was taken out of the contract. It was not put in, but it had no bearing. There was no request to quote, use best efforts at all. Counselors, I understand what her husband, her counsel's letter said, is she proposes that the sales period be extended for three years from the time when Pearson commences a bona fide commercial effort to sell the courses, which was substantially functional. And what they agreed to was a fixed time extension. Is that correct? That is correct, Your Honor. The point I'm making is that that pre-contract correspondence is not admissible under this court's rules, under this court's holding in the Miller case that they cited, we cited where the court specifically said, no, you cannot include pre-correspondence material where you have as here, a merger and integration clause that says this is the entire agreement. And so I don't believe that as a matter of evidence, that matter is before this court. But let me go back if I can, to the Anthem-Signa merger litigation case, which is a subsequent Delaware Chancer decision that we cited in our 28J letter. And the court says, performance of a duty subject to condition cannot become due unless the condition occurs or its non-occurrence is accused. But the framework also recognizes that where a party's breach by non-performance contributes materially to the non-occurrence of the condition, the non-occurrence is excused. And if you take a look at the cases we've cited, I'm seeing I'm running out of time, both Anthem-Signa, as well as the cases that they've cited in their 28J response, make it quite clear that whereas here, a party materially breaches by failing to do anything, then the burden shifts to that party to show that had it done something, it could not have achieved what it was supposed to have done. And if you want to save the rest of your time, you're down to one minute, 15 seconds there. I know you wanted two minutes, but we've gone past that. So you want to save me the rest of your time? I do, Your Honor, unless you have any further questions with me at this point. Okay. The court may have more later on the rebuttal time. Should we go then? Let's do your opposing counsel, Mr. Peterson. Mr. Peterson, please proceed. Thank you. Thank you, Your Honor. May it please the court, William Peterson on behalf of Pearson Education. Your Honor, let me begin just briefly by talking about the evidence of the sales efforts that are in the record. I point the court, it's record pages 565 to 568. This is an interrogatory response that our senior vice president of finance, Paul Fletcher, referenced in his affidavits, explained that this was his testimony, that he had personal knowledge of all of these sales efforts. And when my friend says there were no sales efforts made, what you'll see is that the record is frankly uncontroverted, that in addition to spending the tens of millions of dollars on development, on sales force education, on search engine optimization, the program was submitted for numerous requests for proposal. And in fact, was sold to several school districts. So from our perspective, the evidence is indisputable. Counsel, so first you agree that the district court didn't reach the question of whether that testimony, that declaration by Mr. Fletcher was admissible, correct? Yes, Judge Kahn. And from my review of it, it's not clear to me that his testimony and his personal knowledge are enough for us to conclude that his incorporation by reference of interrogatory answers is admissible. If we were to determine that this were relevant, why shouldn't we leave that to the district court to make judgments as to what is and isn't admissible, if this were a material point? Your Honor, I believe it can be fully addressed by the court at this time. And to be clear, I don't think this is, if you look at his declaration and that's record page 1099, what he stated was the interrogatory, you'll forgive me, Your Honor, he is the senior vice president of the Pearson finance system. I'm sorry, it's record page 1100, it's paragraph five. He didn't simply adopt an interrogatory response. He said that he was personally familiar with these efforts. And he, in fact, was the initial person to verify the interrogatory response. He is our senior vice president of finance. It is frankly unclear to me what additional effort he would need to, what additional statements he would need to include, other than the fact that he was a key employee at Pearson education. Well, typically, typically in an affidavit where you're trying to establish personal knowledge of particular allegations, you would say, with regard to this particular sales effort, I have personal knowledge of it because, not simply because I was the vice president, but because I was involved in those efforts or I witnessed them, or I reviewed the documents, which are business records, which established that. But in any case, the district court never parsed through this because the district court said it was unnecessary to do it. Right. That's correct, your honor. But I will say, I don't think this is entirely unrelated to the causation point, because I do think what is extraordinary here is that you have a plaintiff attempting to go through summary judgment with no evidence of breach and no evidence of causation. And that's the difficulty here with the burden shifting that my friend is proposing, that this is not a case in which Dr. Cotting has ever identified. Here is what I believe Pearson education should have done. Here is some sales effort that you should have undertaken that you did not. So let me call it. Well, counsel, the way I read the Jacobs case is it says that the burden shifts to the putatively breaching party. And of course, the district court never decided the question of duty and the district court's discussion of this at 27 of the opinion is that even if the court were to accept that the burden shifted, Pearson met this burden by pointing out that the record is barren. And that's not my understanding of how burden shifting works, that if there's a burden shifting, there's an affirmative duty to show why any alleged breach didn't materially contribute. And you've claimed that you've done that. But the district court stated that no, even if the burden shifted, all you had to do is say there's no evidence. And that's not my understanding of the way burden shifting works. So maybe you did have evidence in there. But if we agree that the burden shifted, why shouldn't we just the district court deal with this issue? If we agree that the burden shifted, and there's at least a possibility of a duty here that the district court also didn't reach, why should we come through the record to make those determinations? Well, I've got two answers in response to that, Your Honor. First, accepting all of those, then I assume you would likely remand the district court. I do think you should reach the duty issue. I agree with my friend. It is a question of law that would be decided by a judge and not by a trier of fact. Here, as Judge Smith pointed out, there were express negotiations by the parties regarding the whether Pearson had used whether Pearson would use commercially reasonable efforts. Well, I say I don't, I don't see that. I've looked at all of this. And what I see is that they've proposed that the sales period be extended for three years from when Pearson commences bona fide commercial efforts. And what the parties agreed on is not language that we have no efforts. The parties simply agreed on a hard deadline for when whatever had to be done had to be done. So, I mean, that doesn't, to me, compel a finding that based on those type of negotiations, there was no duty because you have an original contract, which may or may not have had a duty of some type of efforts. And then whatever that duty existed was simply extended for three years. So if there was no duty, there was no duty. If there was a duty, it went for several more years. But I don't see the fact that Dr. Cotting's husband proposed a particular way the three year period starts and that your client responded, no, we're just going to have a fixed period of time is compelling on the issue of whether there was or wasn't a duty. Well, respectfully, Your Honor, I disagree. What you see Dr. Cotting saying during the negotiations is I am concerned that Pearson Education will not use bona fide commercial efforts to sell this product. And I would like to be protected. I would like a provision put in here that will protect me against Pearson Education not using bona fide commercial efforts. So you're characterizing the provision I just read, right? In view. Yes, Your Honor. In view. Okay. So what he said is what I just read. Well, in addition to that said, the question is not, Your Honor, simply what he requested, but why he requested it. It's not simply in view of the uncertainty regarding when Pearson will actually begin selling the courses again. That in the negotiations is inconsistent with the idea that Pearson Education had a pre-existing and would immediately begin selling the courses. I don't know why it was necessarily inconsistent, but you didn't write back. We have no such duty. You wrote back. We're just willing to do three years, right? Yes, Your Honor. And the way I would characterize that is to say that Dr. against Pearson Education, not using bona fide commercial efforts and parties chose not to include that. Let me turn if I make my answers to Jacob's. I have four of them. And the first I think is you heard how my friend explained his theory of burden shifting. That is when a party does nothing, the burden shifts to the other party to disprove causation. That is how Dr. Cotting has consistently argued burden shifting. That is how she is consistently attempted to argue causation in this case. That is not Jacob's. Jacob's is about what is sometimes referred to as the prevention doctrine, a doctrine related to conditions proceeding that shifts the burden of proving whether a condition proceeding would or would not have occurred to the party that allegedly materially interfered with its occurrence. Now, when you look at the briefing below, you will not find Dr. Cotting arguing the prevention doctrine. You will not find her arguing that there was a condition proceeding and the duty that she accused us of breaching this duty of using our best or reasonable efforts to sell the product. Everyone agrees is not a duty that is subject to a condition proceeding, whether it exists as a duty or not. It's not a duty that's subject to a condition proceeding. So all of this Jacob's discussion is not relevant to the theory of breaches Dr. Cotting has presented. But Dr. Cotting has alleged that you had a duty to sell and that you breached and that's why you didn't hit the $75 million number that would have kicked in additional amounts. And I just don't see how that is how that is materially distinguished from Jacobs, where the court specifically said the failure of Tenneco to submit the contracts for approval, which to me is the equivalent of the failure to try to sell by the board constituted, quote, unquote, bad faith. The only way Tenneco could avoid the consequences of its breach, and here it's a putative breach, was to establish that the failure did not materially contribute to the non occurrence, which means your duty was to show that this alleged breach didn't contribute to the failure to hit 75. I don't see how that's distinguishable from what happened in Jacobs. Well, we read Jacobs as concerning a breach of a covenant that was allegedly subject to a condition proceeding. We think that's the distinction the California Court of Appeals drew in historic and historic. If Dr. Cotting had accused us of breaching a duty that was subject to a condition proceeding, then this argument may well have developed. We may well have had an argument arise, but we haven't. The duty was to pay her money and the condition proceeding was $75 million in sales. And if she had actually asserted that, we would have developed these arguments in front of the district court. She has not accused us of breaching that duty, and therefore we didn't interject any sort of condition proceeding arguments as a defense to that. Now, to be clear, I don't think we would have. This is, in my view, not a condition proceeding. I will tell you, we have surveyed the cases. We have not found any case nationally in which a formulaic payment was treated as a condition proceeding. Conditions proceeding are disfavored in the law. The right reading of this year is a covenant to pay Dr. Cotting according to a formula based on sales. No different than any employer who hires an employee and offers to pay them $15 an hour for the hours the employee works. That's not a condition proceeding. That's a covenant to pay according to a formula, and that's the way it should be treated here. When you look at Dr. Cotting's cases, you don't find any sort of cases in which these formulaic payments are the condition proceeding. All of them involve discrete events that needed to occur. And so consider, for example, there's a capped royalty in this case, maximum amount that Dr. Cotting could have recovered. But imagine if it were uncapped, if it were simply a flat percentage based on sales. Under those circumstances, excuse me, under those circumstances, it's impossible to presume what would have happened. Would you presume an infinite number of sales? So I certainly accept Jacob's, but I think the right reading here is the obligation to pay according to a formula. Let me be sure I understand your argument in the context of this particular case. I understand that Dr. Cotting is seeking an unspecified amount of damages from Pearson Education. The amount is unspecified because she presented no evidence as to what sales could or should have been made, or whether that sales would reach the bonus targets without an alleged breach. Is that correct? Yes, Your Honor. So that without that, you don't have a condition precedent. You don't really get to Jacob, right? Yes, Your Honor. And then finally, one point here on its own terms, Jacob's and the other cases applying section 245 of the restatement shift burden to disprove the occurrence of the condition proceeding only after the plaintiff has made an initial showing that the failure of the defendant materially contributed to the non-occurrence of the condition. You see this in the Williams case from Delaware that was cited by Dr. Cotting and Judge Bennett. I'll confess the district court's answer there about identifying the lack of evidence that the record is barren, that we materially contributed to the non-occurrence is probably no answer if the burden did shift. But however, it is a complete answer to why the burden didn't shift. If you look, it's on record page 92. The record is truly barren here of any evidence of causation. We argued at the summary judgment stage. There is no evidence of even a single additional sale that would have occurred had we conducted whatever additional sales efforts Dr. Cotting contends that we should have engaged in. And without any evidence that our failure or inaction contributed to the non-occurrence of this condition, the burden wouldn't shift under the restatement. All right. Your time is up. Let me ask both my colleagues whether either has additional questions in this case for Mr. Peterson. I'm fine. Very well. Thank you. All right. Back to Dr. Cotting's counsel for remaining rebuttal time. Part three of our brief, our brief in chief, starting on page 38 and continuing to page 45, finds why none of the is admissible that Pearson education is proffered. We'll rest on the brief on that point. With respect to this condition precedent concept, I'd ask the court to read the historic decision that my learned friend has cited in his 28-J response. And it is as follows. Yet plaintiff's assertions pertain to a claim of breach of the express terms of the contract, not a breach of the implied covenant of good faith and fair dealing. If Citicorp had prevented the loan from being in balance, then the condition precedent would be excused and Citicorp would be liable for breach of its express obligation to make the loan disbursements. That is exactly the point that we have here. And is that exactly the point that Judge Bennett was averting to? And then the court went on. That legal theory, however, was not pursued in this litigation in the historic case. To quote the court, that theory was exactly what Dr. Cotting pursued and proved by uncontradicted evidence on summary judgment in this case. And I believe that, as my learned friend has said, it is incumbent upon this court on de novo review to take a look at the evidence, the admissible evidence, and determine that, in fact, there has been a breach. The burden shifted to Pearson to show that had it done something, it could not have done anything. It could put on no evidence whatsoever. And therefore, this court should enter summary judgment for Dr. Cotting and remand with instructions to enter judgment. Very well. Other questions by my colleagues? Thank you. Okay, then we wish to thank both counsel here. And I would like to personally note how much I appreciate the collegial way in which you have treated one another. Would that all counsel would follow a similar pattern? It helps things a lot. So we thank you. The case just argued is submitted.
judges: Boggs, M. Smith Jr., Bennett